**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x

**UNITED STATES OF AMERICA, THE STATES OF CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, VIRGINIA, WASHINGTON, WISCONSIN, THE CITY OF CHICAGO, and THE CITY OF NEW YORK** *ex rel.* **OMNI HEALTHCARE, INC.,**

**OPINION & ORDER**

**12-cv-6440 (NG) (ST)**

                              **Plaintiffs,**

                      **-against-**

**MCKESSON CORPORATION and ONCOLOGY THERAPEUTICS NETWORK CORPORATION,**

                              **Defendants.**

------------------------------------------------------------ x

**GERSHON, United States District Judge:**

**I.    Background**

Relator Omni Healthcare Inc. ("Omni") brings this *qui tam* action on behalf of the United States, 30 states, the District of Columbia, and the cities of New York and Chicago. Familiarity with my decision granting in part and denying in part a motion to dismiss the Second Amended Complaint (the "SAC"), which includes a recitation of the SAC's factual allegations and this action's procedural history, is presumed. *See U.S. ex rel. Omni Healthcare Inc. v. McKesson Corp.* ("*McKesson I*"), 2019 WL 438357 (E.D.N.Y. Feb. 4, 2019). Following that decision, the

remaining defendants are McKesson Corporation ("McKesson") and Oncology Therapeutics Network Corporation ("OTN," together with McKesson, "Defendants"), and the remaining claims are brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.* and analogous state statutes.

Following my decision in *McKesson I*, the parties have been engaged in discovery. Omni now moves for leave to file a Third Amended Complaint (the "TAC"). The TAC's proposed, amended allegations are set forth below. For the reasons that follow, the motion is granted.

## II.     The TAC's New Factual Allegations

The TAC, for the most part, does not change the SAC's factual allegations, and a full description of the facts as alleged in the SAC is described in *McKesson I*. Here, I recite only those facts that are newly alleged in the TAC. The following facts are assumed to be true for purposes of this motion.

In addition to repackaging Oncology Drugs into syringes at their own facilities and the facilities of their contracted vendors, Defendants also conspired with and enlisted third parties, such as MedPrep Consulting, Inc. ("MedPrep"), to repackage Oncology Drugs for delivery to McKesson's customers.[1] MedPrep is a facility located in New Jersey, which received vials directly or indirectly from Defendants from which it harvested overfill to create syringes for delivery to Defendants' customers. This was accomplished in two ways. For some customers, Defendants delivered the vials directly to MedPrep, which harvested the overfill and shipped the syringes to Defendants' customers. For other customers, Defendants delivered the vials to the

---

[1] As in the SAC, the TAC also defines the drugs at issue in this action, referred to as the "Oncology Drugs," to include Aloxi, Procrit, Aranesp, Neupogen, Taxotere, and Kytril in both the brand and generic forms.

customers, and the customers transshipped the vials to MedPrep for harvesting the overfill. MedPrep then shipped the syringes back to the customers.

Defendants' sales representatives worked directly with MedPrep sales representatives to encourage Defendants' customers to utilize MedPrep's services, so that Defendants could offer prices for Oncology Drugs that were competitive with prices offered by other drug distributors. Defendants' representatives quoted prices for Oncology Drugs based on the harvesting of overfill by MedPrep and used MedPrep representatives to contact Defendants' customers directly to encourage them to buy Oncology Drugs from Defendants and to receive the Oncology Drugs in syringes manufactured by MedPrep.

McKesson enlisted MedPrep before, during, and after the time period in which it was manufacturing syringes. Defendants' relationship with MedPrep began at least as early as 2005 and possibly earlier and continued uninterrupted until April 2013 when MedPrep was shut down by federal and state authorities. MedPrep and its principals were indicted in 2015 in the Eastern District of New York for numerous illegal and unsafe practices, including harvesting overfill from vials and placing it in syringes for resale and placing false "use by" dates on the syringes. The principals pled guilty to conspiracy to commit wire fraud.

The pre-filled syringes created by MedPrep for delivery to Defendants' customers were also manufactured in a manner inconsistent with U.S. Food and Drug Administration ("FDA") requirements, as well as the Current Good Manufacturing Practices ("CGMPs") and United States Pharmacopeia ("USP") standards, causing such products to become adulterated and misbranded.

### III. Discussion

#### a. Leave to Amend Under Rule 15(a)

Omni's motion for leave to amend is governed by Federal Rule of Civil Procedure 15(a)(2), which, as relevant here, provides that a "a party may amend its pleading . . . [with] the court's leave." Rule 15(a)(2) directs that the "court should freely give leave when justice so requires." This is a "liberal and permissive standard." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (internal quotation marks omitted). Leave to amend is properly denied, however, in cases of "futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016). An amendment would be futile if it would not withstand a motion to dismiss. *See id.* 28–29.

#### b. Futility

Defendants argue that Omni's TAC would be futile because it would be barred by the FCA's statute of limitations and public disclosure bar and is insufficient under Federal Rule of Civil Procedure 9(b).

##### i. FCA's Statute of Limitations and Relation Back Under Rule 15(c)

The FCA's statute of limitations provides:

> A civil action under section 3730 may not be brought--
>
> > (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> > (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b).  Defendants argue that, under either prong, the proposed TAC, which was filed with the motion in November 2022, would be untimely.  Omni responds that its amendments "relate back" to the First Amended Complaint (the "FAC") under Rule 15(c)(1)(B), which provides that an "amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Defendants contend that Omni does not meet this standard.  They continue that, if it does, the TAC can relate back only to the publicly filed SAC, not the FAC, which was filed under seal, and therefore, all but a "small fraction of alleged conduct related to MedPrep" is still time-barred.  Defs.' Opp'n 12.

### 1. May the TAC Relate Back to the FAC or Only the SAC?

Defendants argue that the Second Circuit's decision in *United States v. Baylor University Medical Center*, 469 F.3d 263 (2d Cir. 2006), precludes the TAC from relating back to the FAC because the FAC was filed under seal.  In *Baylor*, the Second Circuit held that the government could not rely on Rule 15(c)(1)(B) to relate back its complaints-in-intervention to the relator's earlier-filed, sealed *qui tam* complaint.  In *McKesson I*, I applied *Baylor* and found that Omni's claims against five newly added McKesson subsidiaries did not relate back to the FAC.

*Baylor*, however, addressed whether the government could rely on Rule 15(c)(1)(B) to relate back its complaints-in-intervention to the relator's earlier-filed complaint; it does not preclude the relator itself from relying on Rule 15(c)(1)(B) to amend its own complaint to add additional factual allegations against the same defendants that were originally named.  Additionally, *McKesson I* concerned Omni's attempt to relate back claims against newly added defendants; it, too, did not address whether the relator could add additional factual allegations against the same defendants named in the earlier-filed, sealed complaint.  Indeed, in *McKesson I*,

I emphasized that "my conclusion [was] consistent with my focus . . . on whether the earlier filed complaint identified the defendant at issue." *McKesson I*, 2019 WL 438357, at *12.

Accordingly, I decline to read *Baylor* and *McKesson I* so broadly as to prevent a relator from relying on Rule 15(c)(1)(B) when filing amended, factual allegations against the same defendants named in the earlier filed, sealed complaint.[2] The TAC may relate back to the FAC if the Rule 15(c)(1)(B) standard is otherwise satisfied.

### 2. Do Relator's Allegations Satisfy Rule 15(c)(1)(B)?

"The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted). Under Rule 15(c)(1)(B), "[f]or a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading." *Id.* (internal quotation mark omitted). The "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Id.* "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." *Id.*; *see also* 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Howard M. Erichson, *Federal Practice and Procedure* § 1497 (3d ed. Apr. 2023 update) (explaining that "amendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding pleading fall within Rule 15(c)(1)(B)"). "In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an

---

[2] Other courts in this circuit have, likewise, explained why *Baylor* should not be read so broadly. *See U.S. ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 803–04 (S.D.N.Y. 2017), *rev'd and remanded on other grounds*, 899 F.3d 163 (2d Cir. 2018); *U.S. ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 198 n.4 (S.D.N.Y. 2016).

entirely distinct set of factual allegations will not relate back." *Slayton*, 460 F.3d at 228 (internal quotation marks omitted).

A comparison of two of the cases relied upon by the parties is instructive. In *United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186 (S.D.N.Y. 2016), the court found that the relator's amended complaint alleged new claims that did not relate back to the original complaint. In one newly added claim, for example, the relator's amendments alleged an "entirely different" factual circumstance. *Id.* at 199. The original complaint pleaded that "Moody's ratings of AIG were an example of its improper practice of overrating securities." *Id.* The amended complaint, however, alleged that Moody's "deliberately *underrated* AIG securities during the 2008 AIG bailout deal" in order to persuade the United States to pay AIG more money. *Id.* at 200.

By contrast, in *United States ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510 (S.D.N.Y. 2013), the court held that the relator's amended complaint related back. The original complaint pleaded that Schindler Elevator Corp. ("Schindler") violated the FCA when it failed to file, or filed false, "VETS-100" reports, which the Vietnam Era Veterans Readjustment Assistance Act required Schindler to file with the Department of Labor. It alleged that Schindler had failed to file any reports before 2004, but the relator learned, after obtaining limited discovery, that reports for the years 1999, 2000, and 2003 had been filed. His amended complaint alleged that false reports were filed in those years. The court found that the allegations stemmed from the same "alleged course of conduct." *Id.* at 519. Schindler knew all along that it had filed reports in those years and could not "feign surprise" at the proposed amendments once the relator learned that the reports existed. *Id.*

Here, the relator's proposed amendments arise "out of the conduct" or the "general fact situation alleged in the original pleading." *Slayton*, 460 F.3d at 228. In the FAC, Omni alleged:

> Defendant Manufacturer/Distributors have taken certain injectable oncology drugs . . . which come already packaged by the original manufacturer in single dose and/or multi-dose vials and remove and pool the oncology liquid from those vials to be placed into Defendant Manufacturer/Distributors' own pre-filled syringes which are then distributed to the provider/physicians for patient treatment. It is this conduct, the removal and pooling of Oncology Drugs into Defendant Manufacturer/Distributors' own pre-filled syringes through their own Pre-filled Syringe Program, which forms the basis of the Complaint.

FAC ¶ 32. Omni further alleged:

> Defendant Manufacturer/Distributors contract with provider-physicians to sell the Pre-Filled Syringes and also provides financial incentives to the physicians in the form of discounts and free services to buy their Oncology Drugs in their Pre-Filled Syringe program as opposed to purchasing the Oncology Drugs in the single-dose or multi-dose vials packaged by the original manufacturers and as approved by the FDA for interstate commerce and human use.

*Id*. ¶ 98.

The TAC merely adds additional factual allegations about how Defendants effectuated the fraudulent scheme described in the FAC. The TAC explains that Defendants enlisted third parties, such as MedPrep, to assist Defendants with harvesting the overfill, and Defendants' sales representatives worked directly with MedPrep sales representatives to encourage Defendants' customers to utilize MedPrep's services. The TAC's allegations grow out of the same course of conduct described in the FAC.

Seeking to avoid the relation back of the TAC to the FAC, Defendants additionally argue that Omni waived, under Federal Rule of Civil Procedure 72(a), any argument that the TAC relates back to the FAC because it did not object to certain statements that the Honorable Steven Tiscione, magistrate judge, made at an October 2022 hearing. This argument is without merit. Insofar as Judge Tiscione denied Omni's request for MedPrep-related discovery until it sought,

and obtained, leave to amend its complaint, Omni complied with that ruling by filing the instant motion. Such compliance should not be construed as a waiver of the issue before me. Judge Tiscione's statements were made in the context of considering whether Omni was entitled to MedPrep-related discovery in the absence of filing an amended complaint. The statements pertained to the discovery standard, not the relation back standard, and have no bearing on the latter issue.

In sum, the TAC relates back to the FAC and is not futile as untimely under the FCA's statute of limitations.

### ii. FCA's Public Disclosure Bar

The TAC alleges conduct pre- and post-March 2010; accordingly, the pre-2010 and post-2010 versions of the public disclosure bar are relevant. *U.S. ex rel. Patriarca v. Siemens Healthcare Diagnostics, Inc.*, 295 F. Supp. 3d 186, 195 (E.D.N.Y. 2018). In relevant part, the pre-2010 public disclosure bar provided that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . [unless] the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4) (2006). In relevant part, the post-2010 public disclosure bar provides that "[t]he court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . [unless] the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4). Under both versions, courts in the Second Circuit employ a two-step approach. *Patriarca*, 295 F. Supp. 3d at 196. At step one, courts consider whether substantially the same allegations or transactions have been publicly disclosed prior to the filing of the relator's claim. *See id.* If so, courts look to whether the suit may, nonetheless, go forward because the relator is an "original source of the

information." *See id.*; *accord U.S. ex rel. Omni Healthcare Inc. v. U.S. Oncology, Inc.*, 2022 WL 17685383 (E.D.N.Y. July 21, 2022).

Defendants argue that three public disclosures bar the amended allegations in the TAC. First, Defendants point to another *qui tam* action that they refer to as the "*Jedloe* lawsuit." *See U.S. ex rel. Jedloe v. Med Prep Consulting, Inc.*, No. 12-cv-4915 (E.D.N.Y. voluntarily dismissed Mar. 15, 2018). The amended complaint in the *Jedloe* lawsuit named MedPrep and McKesson as defendants. Defendants argue that the *Jedloe* lawsuit publicly disclosed that MedPrep had engaged in a fraudulent scheme in which it harvested overfill and that McKesson participated in MedPrep's scheme. The public disclosure of the *Jedloe* lawsuit occurred on February 1, 2018 when the action was unsealed. Second, Defendants argue that the February 13, 2015 criminal indictment of MedPrep's founder, sole owner, and president Gerry Tighe, and subsequent filings in that proceeding, publicly disclosed that MedPrep "repackaged vials of expensive injectable drugs into syringes." Defs.' Opp'n 5 (quoting Indictment at 8, *United States v. Med Prep Consulting, Inc.*, No. 15-cr-62 (E.D.N.Y. 2015)). Third, Defendants contend that public filings in this litigation since April 2020 described the MedPrep and McKesson relationship.

In considering whether any of these claimed public disclosures bars Omni from filing the amended allegations, a threshold question is which pleading is relevant to the public disclosure bar analysis. Omni filed the TAC in November 2022, but the FAC predates each of the above-noted public disclosures. Thus, if what matters for public disclosure bar purposes is when the FAC was filed, the later public disclosures do not bar the proposed amendments in the TAC. The public disclosure bar bars only those claims that are substantially the same as prior, not later, public disclosures.

I agree with the Fourth Circuit's analysis in *United States ex rel. Beauchamp v. Academi Training Center*, 816 F.3d 37 (4th Cir. 2016): "[T]he determination of when a plaintiff's claims arise for purposes of the public-disclosure bar is governed by the date of the first pleading to particularly allege the relevant fraud and not by the timing of any subsequent pleading." *Id.* at 45–46 (concluding that the public disclosure bar did not bar amended factual allegations in the Second Amended Complaint because the "fraudulent scheme" was first alleged in the First Amended Complaint). And the Second Circuit, in *Grabcheski v. American International Group, Inc.*, 687 F. App'x 84 (2d Cir. 2017), held that the public disclosure bar did not bar the relator's Third Amended Complaint when the claimed public disclosures post-dated the pleading in which the relator "pleaded his current FCA theory." *Id.* at 86. As *Beauchamp* explained, the public disclosure bar, thus, will not bar a relator from amending its complaint to "add[] further detail about a claim already alleged." *Beauchamp*, 816 F.3d at 45.

The question becomes whether the TAC's amended allegations relating to MedPrep constitute a new "claim" or whether the MedPrep allegations merely add factual detail to a claim that was already alleged in the FAC. As discussed above in connection with whether Omni meets the relation back standard, I conclude the latter. The same "fraudulent scheme" or "FCA theory" was alleged in the FAC. Omni merely adds additional factual details about how the scheme was effectuated.[3]

---

[3] As *Beauchamp* also explained, nothing in the Supreme Court's decision, *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007), compels a different analysis. 816 F.3d at 44–45. There, on a post-verdict motion to dismiss, the Supreme Court held that a relator could not establish that he was an "original source" — the exception to the FCA's public disclosure bar — for a claim on which he had prevailed at trial by showing that he was an "original source" for a different claim that he had alleged in his original complaint. The latter claim was withdrawn from the case prior to trial and pleaded a "fundamentally different fraudulent scheme." *Rockwell*, 549 U.S. at 473. *Rockwell*, therefore, does not affect the issue

- 11 -

Accordingly, the public disclosure bar is not a bar to the TAC's amended allegations.

### iii. Rule 9(b)

"*Qui tam* complaints filed under the FCA, because they are claims of fraud, are subject to Rule 9(b)," which requires a plaintiff to plead fraud claims with particularity. *U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017). Generally, to comply with Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id*. However, an FCA complaint "can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge." *Id*. at 86.

In *McKesson I*, I held that the SAC met this standard. Specifically, I explained:

> Omni has detailed an extensive scheme whereby defendants caused health care providers to submit claims to government health programs for drugs that were not eligible for reimbursement. Omni has described how defendants marketed their fraudulent 'Prefilled Syringe Program' to health care providers, identified the six drugs that were part of the scheme, and provided an approximate timeframe. The information that would permit further identification of the false claims is the identity of the healthcare providers who ordered prefilled syringes. This information is within defendants' knowledge. Thus, Omni has satisfied the particularity requirement. It is also worth emphasizing that '[i]t is not the purpose of Rule 9(b), as applied to FCA *qui tam* actions, to render the FCA toothless as to particularly clever fraudulent schemes.'

*McKesson I*, 2019 WL 438357, at *10 (quoting *Chorches*, 865 F.3d at 86). The above-noted reasons that the SAC satisfied Rule 9(b) apply equally to the TAC, which only adds additional

---

here, namely, whether the public disclosure bar prevents a relator from adding further detail to the same claim already alleged.

factual allegations about how the Defendants worked with MedPrep to effectuate their scheme. Accordingly, the TAC is alleged with sufficient particularity under Rule 9(b).

Defendants argue that I must consider whether the proposed MedPrep allegations satisfy Rule 9(b) separately from the rest of the TAC. In other words, they argue that I should not consider the allegations that remain in the TAC from the SAC (that I already found sufficient under Rule 9(b) in *McKesson I*) in evaluating whether the new, amended allegations satisfy Rule 9(b). They rely on the Sixth Circuit's decision, *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493 (6th Cir. 2007), and argue that "courts must proceed 'paragraph-by-paragraph' when evaluating allegations under Rule 9(b)." Defs.' Sur-Reply 5 (quoting *Bledsoe*, 501 F.3d at 509). But *Bledsoe* held that to be necessary when a complaint alleges "separate and unrelated fraudulent conduct" side-by-side in the same complaint. *Bledsoe*, 501 F.3d at 509. Here, by contrast, the MedPrep allegations do not allege a distinct fraudulent scheme but add further detail about how the Defendants effectuated the same fraudulent scheme that was alleged in the SAC.

Accordingly, the TAC is not futile on the ground that it would not survive a motion to dismiss under Rule 9(b).

### c. Undue Delay and Prejudice

Defendants also argue that the motion should be denied because of Omni's undue delay in seeking to add the MedPrep allegations, without a satisfactory explanation, and the undue prejudice that permitting the amendment would cause them, namely, expanding discovery and "delay[ing] resolution of the case by months or years, at significant expense." Defs.' Opp'n 23. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174

(2d Cir. 2017).  In other words, "[m]ere delay" in seeking amendment, even years after the plaintiff acquired the new facts alleged in the amended complaint, "does not provide a basis for the district court to deny the right to amend."  *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987).

In determining whether undue prejudice has been shown, central considerations are whether the non-movant has been on notice of the new allegations, whether they arise from the same conduct, transaction, or occurrence as the earlier-filed pleadings, and the stage of the case. Courts have not found undue prejudice where the non-movant has been on notice of the newly alleged facts, the amended allegations arose out of the same conduct, transaction, or occurrence as the earlier-filed pleadings, and the amendment was sought prior to summary judgment briefing or trial.  *See, e.g.*, *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *12–13 (E.D.N.Y. Mar. 26, 2010); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 1357946, at *3–6 (S.D.N.Y. May 12, 2009); *cf. Bradick v. Israel*, 377 F.2d 262, 263 (2d Cir. 1967) (affirming denial of amendments, which "consisted of novel theories of law with new problems of proof," on the eve of trial).

Other factors to consider in the undue prejudice analysis are whether granting leave to amend would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." *Pasternack*, 863 F.3d at 174.  However, courts in this circuit have repeatedly held that "the need to conduct additional discovery is not, in itself, sufficient to constitute prejudice" because any undue prejudice can "be mitigated by adjustments to the discovery schedule."  *E.g.*, *Glenmark*, 2010 WL 1257803, at *12.

Here, Defendants have not shown how granting Omni's motion would unduly prejudice them. Defendants point only to the fact that granting the amendments would require additional discovery, but, as noted, that in and of itself is not a sufficient basis for finding undue prejudice. The other considerations weigh against such a finding. No summary judgment briefing schedule or trial date has been set, and, as discussed above, the amended allegations arise out of the same conduct or general fact situation alleged in the original pleading. Additionally, Defendants acknowledge in their opposition to Omni's motion that they have been on notice, since at least early 2020, that Omni sought discovery related to the MedPrep allegations and might amend its complaint to include the MedPrep allegations at a later point in the litigation. Defs.' Opp'n 7–8.

Because Defendants have not shown a sufficient basis for a finding of undue prejudice that would result from the amendment (or Omni's bad faith, which Defendants do not argue), their argument that Omni unduly delayed amending the SAC is not a sufficient ground for denial of Omni's motion. To the extent that Omni is, nevertheless, required to explain its delay, its explanation that it believed the amended MedPrep allegations were already encompassed within the SAC and that it was awaiting further discovery before amending the SAC is satisfactory.[4]

Accordingly, the motion for leave to amend will not be denied on the grounds of undue delay or prejudice.

---

[4] In the absence of a showing of sufficient undue prejudice or bad faith conduct, some courts in this circuit have still required the movant to offer "*some* explanation" for its delay, even if the reasons are "vague or thin," *see, e.g.*, *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97–98 (S.D.N.Y. 2010) (internal quotation marks omitted), while others have not imposed such a requirement. *See, e.g.*, *Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 381–82 (S.D.N.Y. 2022) (granting leave to amend, though no explanation provided for the delay).

**IV.     Conclusion**

For the reasons set forth above, Omni's motion for leave to file the TAC is granted.[5]

SO ORDERED.

_____/S/_____
**NINA GERSHON**
**United States District Judge**

July 13, 2023
Brooklyn, New York

---

[5] Although the TAC brings reverse false claim and conspiracy FCA claims (counts 3 and 4) and mistake of fact and unjust enrichment common law claims (counts 5 and 6), these claims were dismissed in *McKesson I*. The court considers them dismissed without further motion practice.