UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑ x

UNITED STATES OF AMERICA, THE
STATES OF CALIFORNIA, COLORADO,
CONNECTICUT, DELAWARE,
DISTRICT OF COLUMBIA, FLORIDA,
GEORGIA, HAWAII, ILLINOIS,
INDIANA, IOWA, LOUISIANA,
MARYLAND, MASSACHUSETTS,
MICHIGAN, MINNESOTA, MONTANA,
NEVADA, NEW HAMPSHIRE, NEW
JERSEY, NEW MEXICO, NEW YORK,
NORTH CAROLINA, OKLAHOMA,
RHODE ISLAND, TENNESSEE, TEXAS,
VERMONT, VIRGINIA, WASHINGTON,
WISCONSIN, THE CITY OF CHICAGO,
and THE CITY OF NEW YORK *ex rel.*
OMNI HEALTHCARE, INC.,

                  Plaintiffs,

            -against-

MCKESSON CORPORATION and
ONCOLOGY THERAPEUTICS
NETWORK CORPORATION,

                  Defendants.

**OPINION & ORDER**

**12-cv-6440 (NG) (ST)**

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑ x
**GERSHON, United States District Judge:**

**I.    Background**

Relator Omni Healthcare Inc. ("Omni") brings this *qui tam* action on behalf of the United States, 30 states, the District of Columbia, and the cities of New York and Chicago. Familiarity with my decisions granting in part and denying in part a motion to dismiss the Second Amended Complaint, *U.S. ex rel. Omni Healthcare Inc. v. McKesson Corp.* ("*McKesson I*"), 2019 WL 438357 (E.D.N.Y. Feb. 4, 2019), and granting Omni's motion for leave to file a Third Amended

Complaint ("TAC"), *U.S. ex rel. Omni Healthcare Inc. v. McKesson Corp.* ("*McKesson II*"), 2023 WL 4517877 (E.D.N.Y. July 13, 2023), is presumed.

Following *McKesson II*, McKesson Corporation and Oncology Therapeutics Network Corporation ("McKesson") filed this motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c). It argues that a complaint that was filed on July 30, 2012 in the action *U.S. ex rel. Jedloe v. Med Prep Consulting, Inc.*, No. 12-cv-4915 (E.D.N.Y. voluntarily dismissed Mar. 15, 2018), which it refers to as the "*Jedloe* complaint," bars certain allegations against McKesson relating to MedPrep Consulting, Inc. ("MedPrep") appearing in the TAC under the "first-to-file bar" of the False Claims Act ("FCA").[1]

The FCA's first-to-file bar provides: "When a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). In *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163 (2d Cir. 2018), the Second Circuit explained that the "command is simple: as long as a first-filed complaint remains pending, no related complaint may be filed." *Id.* at 167. *Wood* construed the standard for evaluating whether actions are "related" for purposes of the first-to-file bar:

> A second action is "related," within the meaning of Section 3730(b)(5), if the claims incorporate the same material elements of fraud as the earlier action, even if the allegations incorporate additional or somewhat different facts or information. In other words, to be related, the cases must rely on the same essential facts. If the first-filed complaint ensures that the Government would be equipped to investigate the fraud alleged in the later-filed complaint, then the two cases are related within the meaning of Section 3730(b)(5).

*Id.* at 169 (internal quotation marks, alterations, and citations omitted).

---

[1] At oral argument, the Relator argued that McKesson's motion is untimely and any arguments regarding the first-to-file bar are waived because McKesson did not assert them earlier in this litigation. Since the Relator did not make this argument until oral argument, I will not address it.

- 2 -

The parties do not dispute that the *Jedloe* complaint was "pending" at the time that the First Amended Complaint ("FAC") in this action, which first named McKesson, was filed. They dispute only whether, under *Wood*, the *Jedloe* complaint is "related" to this action. Following my reasoning in *McKesson I*, I will compare the *Jedloe* complaint to the FAC "because that is the earliest filed complaint in this action bringing claims against any of the present defendants," and the "parties agreed that the FAC is the operative complaint for the issue of relatedness." *McKesson I*, 2019 WL 438357, at *8 n.4.

In considering relatedness, application of the first-to-file bar against a particular defendant is more straightforward when the later-filed action names the same defendant as the earlier-filed action. In *McKesson I*, for example, I dismissed U.S. Oncology from this action under the first-to-file bar because the earlier-filed *Underwood* complaint had named U.S. Oncology as a defendant and had "disclosed that defendant US Oncology, Inc. engaged in the same fraudulent conduct, with respect to injectable oncology drugs, during an overlapping time period." *Id.* at *8.

However, McKesson is not named as a defendant in the *Jedloe* complaint. In *Wood*, where the two complaints alleged "very similar kickback schemes" against the very same defendant, the Second Circuit was able to easily conclude that the two actions were "related" within the meaning of the first-to-file bar. *Wood*, 899 F.3d at 169. But *Wood* did not apply the first-to-file bar in the context of a newly-named defendant in a later-filed complaint. In *McKesson I*, I did so and determined that the first-to-file bar did not apply against any defendant other than U.S. Oncology because *Underwood* "did not name any of those defendants or provide any facts that might associate them with the conduct described." 2019 WL 438357, at *9; *see also U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 379–80 (5th Cir. 2009).

My reading of *Wood* requires applying the first-to-file bar only when the earlier-filed complaint alleged that the newly-named defendant participated in the fraudulent scheme that is alleged in the later-filed complaint. Complaints may be "related" even if they "incorporate additional or somewhat different facts or information." *Wood*, 899 F.3d at 169. However, as *Wood* explained, a later-filed complaint must "incorporate the same material elements of fraud" or, "[i]n other words," "rely on the same essential facts." *Id.* (internal quotation marks omitted). Where the earlier-filed complaint did not allege that the newly-named defendant participated in the fraudulent scheme that is alleged in the later-filed complaint, the later-filed complaint does more than merely allege "additional or somewhat different facts or information." *Id.* It alleges distinct "material elements of fraud" or "essential facts," and the two complaints cannot be said to be "related." *Id.* As *Wood* explained, the purpose of the first-to-file bar is to "reward a *qui tam* relator for putting the Government on notice of a potential fraud without the dilution of copycat actions that provide no additional material information." *Id*. at 169–170 (internal quotation marks omitted). The earlier-filed complaint cannot put "the Government on notice of a potential fraud" if it does not allege that the newly-named defendant participated in the fraud alleged in the later-filed complaint. *Id.* at 170.

McKesson highlights *Wood*'s statement that two complaints are "related" if "the first-filed complaint ensure[d] that the Government would be equipped to investigate the fraud alleged in the later-filed complaint." *Id.* at 169 (internal quotation marks omitted). However, this statement did not create a standalone standard for evaluating whether two complaints are "related;" it must be read together with the requirement that two complaints are "related" only where they share the "same material elements of fraud" or, "[i]n other words," "rely on the same essential facts." *Id.* (internal quotation marks omitted). Only then can it be said that the earlier-

filed complaint "ensure[d] that the Government would be equipped to investigate the fraud alleged in the later-filed complaint." *Id.* (internal quotation marks omitted).

The cases that McKesson cites, in which courts have found the first-to-file bar to apply against a defendant that is newly-named in the later-filed complaint, support this construction of the first-to-file bar. In *United States ex rel. Bane v. Life Care Diagnostics*, 2008 WL 4853599 (M.D. Fla. Nov. 10, 2008), and *United States ex rel. Denis v. Medco Health Solutions, Inc.*, 2017 WL 63006 (D. Del. Jan. 5, 2017), the earlier-filed complaints alleged that the defendants named in the later complaints were participants in the fraudulent schemes described in the later-filed complaints. *See Bane*, 2008 WL 4853599, at *6 (the two pleadings described an "identical" fraudulent scheme and the earlier-filed complaint alleged that the defendant newly-named in the later-filed complaint "participat[ed] in the scheme"); *Medco*, 2017 WL 63006, at *10–11 (earlier-filed complaint "identified only two participants in an alleged conspiracy" — AstraZeneca and Medco — but sued only AstraZeneca, while later-filed complaint sued only Medco). In *United States ex rel. Szymoniak v. ACE Securities Corp.*, 2014 WL 1910876 (D.S.C. May 12, 2014), the two complaints shared a "significant overlap" in defendants and the earlier-filed complaint alleged an "industry-wide fraud" occurring "nationwide." *Id.* at *5. Finally, in *United States ex rel. Mullen v. Cardinal Health, Inc.*, 2023 WL 5807370 (D. Mass. Sept. 7, 2023), the earlier-filed complaint alleged that Cardinal Health, a drug wholesaler, devised a "pre-bate" scheme to penetrate the specialty pharmaceutical distribution market for physician practices, offering physician practices unlawful upfront payments to induce them to enter into exclusive contracts with Cardinal Health. *Id.* at *3. The later-filed complaint alleged the same fraudulent scheme against Cardinal Health, but also named some of the physician practices as defendants.

Having carefully reviewed the allegations in the *Jedloe* complaint, it simply does not allege that McKesson participated in the fraudulent scheme that Omni alleges in the FAC. The two complaints do not share "the same material elements of fraud" or, "[i]n other words," "rely on the same essential facts," such that the *Jedloe* complaint "ensure[d] that the Government would be equipped to investigate the fraud alleged in the" FAC. *Wood*, 899 F.3d at 169 (internal quotation marks omitted). The FAC in this case places McKesson at the heart of a fraudulent scheme to harvest overfill through its "Pre-filled Syringe Program." FAC ¶ 32. In stark contrast, the *Jedloe* complaint alleges an illegal scheme "between MedPrep and *its customers*," who were "large oncology and hematology clinics." *Jedloe* complaint ¶ 1 (emphasis added). It alleges that MedPrep *and its customers* "evenly divided" the "illegal profits" resulting from their fraudulent scheme. *Id.* (emphasis added). There are no allegations that point the finger at McKesson as a participant in MedPrep's and its customers' fraudulent scheme.

The scattered references to McKesson in the *Jedloe* complaint do not show that it shares "the same material elements of fraud" or, "[i]n other words," relies on "the same essential facts" as the FAC. For example, the *Jedloe* complaint describes McKesson as one of "various wholesalers" that sold drug vials to MedPrep's customers that were used in MedPrep's and its customers' fraudulent scheme. *Id.* ¶ 2. It mentions a specific "representative of McKesson," Chris Wixson, who was aware of a "great deal" one of MedPrep's customers received from MedPrep to profit from overfill and alleges that Mr. Wixson stated that he "just happened to see [MedPrep's deal with Associates in Medical Oncology to repackage overfill], I don't condo[n]e [it]." *Id.* ¶¶ 68, 72. McKesson's role as a "wholesaler" is alleged to be merely incidental to MedPrep's and its customers' fraudulent scheme; these allegations do not show that McKesson was participating in that scheme. Indeed, the *Jedloe* complaint makes this point itself.

Paragraph two of the *Jedloe* complaint alleges that MedPrep's customers purchased drug vials from "various wholesalers like McKesson," and the customers, then, shipped the drugs to MedPrep. *Id.* ¶ 2.² It is only after MedPrep received the drug vials that paragraph three of the *Jedloe* complaint alleges: "This is where the fraud begins." *Id.* ¶ 3. And Mr. Wixson's statements only underscore that the *Jedloe* complaint does not allege that McKesson was a participant in MedPrep's and its customers' fraudulent scheme. *Id.* ¶ 72.³

Finally, McKesson requests that I consider Mr. Jedloe's written disclosure statement that he provided to the Government pursuant to 31 U.S.C. § 3730(b)(2), which it argues "provided additional details regarding McKesson's role in the alleged conduct." Defs.' Mot. 3 n.1. The parties dispute whether it would be proper to review the disclosure statement on this motion. I find it unnecessary to decide whether the first-to-file bar analysis must exclude review of mandatory disclosure statements because, even if I consider Mr. Jedloe's disclosure statement, it would not alter my analysis. Mr. Jedloe does not state that McKesson participated in any fraud,

---

² In certain instances, according to the *Jedloe* complaint, once MedPrep's customers purchased drugs from McKesson, McKesson would ship them directly to MedPrep, rather than to MedPrep's customers. *See id.* ¶ 57.

³ The court notes that McKesson seriously mischaracterizes the *Jedloe* complaint's allegations. In its brief, McKesson argues that the *Jedloe* complaint alleges that McKesson was an active partner in MedPrep's and its customers' fraudulent scheme. For example, McKesson argues that, like the FAC, the *Jedloe* complaint "alleged that McKesson worked with MedPrep to improperly pool vials of oncology medications, including the 'overfill' contained in the vials, and to repackage the contents into pre-filled syringes" and "expressly identified McKesson as a participant in MedPrep's scheme." Defs.' Mot. 1–2. In fact, nowhere does the *Jedloe* complaint allege that McKesson was a participant in MedPrep's and its customers' fraudulent scheme, let alone that it "worked with MedPrep" to harvest overfill. *Id.* 1.

Additionally, in its Reply, McKesson argues that what matters for first-to-file bar analysis "is the factual allegations, not the legal conclusions or labels attached to them." Defs.' Reply 2. Yet, there is neither a legal theory nor factual allegations in the *Jedloe* complaint alleging that McKesson participated in the fraudulent scheme.

much less the fraudulent scheme alleged in the FAC or the *Jedloe* complaint. If anything, Mr. Jedloe's disclosure statement further supports reading the *Jedloe* complaint as not alleging that McKesson participated in any fraudulent scheme. It refers to McKesson's "*Possible Involvement*," explains that McKesson "*may be* more than an innocent drug supplier," and states that the "relationship between McKesson and MedPrep and whether McKesson bears any responsibilities for the defrauding of the United States merits further examination." *Jedloe* Disclosure Statement, at 31 (emphasis added).[4] Mr. Jedloe may have had a hunch that McKesson was involved in some misconduct, but the disclosure statement certainly does not set forth "the same material elements of fraud" later alleged in the FAC. *Wood*, 899 F.3d at 169.

For these reasons, McKesson's motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is denied.

**SO ORDERED.**

/S/
**NINA GERSHON**
**United States District Judge**

April 11, 2024
Brooklyn, New York

---

[4] The court notes that, while McKesson filed Mr. Jedloe's disclosure statement under seal because Omni designated it as confidential, the quoted portions of Mr. Jedloe's disclosure statement are hereby unsealed. They add nothing significant to the allegations in the *Jedloe* complaint, and I have relied on them in resolving McKesson's motion. With respect to these portions of the disclosure statement, the weight accorded to the presumption of public access outweighs any competing considerations, including the need for confidentiality. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).